**SO ORDERED.**

**SIGNED this 19 day of July, 2017.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

| | |
|---|---|
| **JEFFREY P. BURGESS,** | **Case No.** |
| | **16-05070-5-JNC** |
| **Debtor** | **Chapter 11** |

-------------------------------------------------------------

| | |
|---|---|
| **JEFFREY P. BURGESS,** | |
| **Plaintiff,** | **Adversary Proceeding No.** |
| | **17-00020-5-JNC** |
| **v.** | |
| **CITIMORTGAGE, INC.,** | |
| **Defendant.** | |

-------------------------------------------------------------

### MEMORANDUM OPINION ALLOWING MOTION TO DISMISS

The matter before the court is the Defendant's Motion to Dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. A hearing took place on May 18, 2017, in Raleigh, North Carolina, following which the court invited the parties to submit supplemental briefs by May 26, 2017. The matter is now ripe for decision.

## BACKGROUND

Jeffrey P. Burgess filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 28, 2016. BR Dkt. 1.[1]  Mr. Burgess listed his residence as 3620 Ranlo Drive, Raleigh, North Carolina 27612 (the "Property"). BR Dkt. 1 at 2. In his schedules, Mr. Burgess indicates that he owns the Property as tenants by the entireties with his spouse, and lists a current value of $984,080. BR Dkt. 19 at 3. His Schedule D lists ABN Amro Mortgage Group ("ABN Amro") as holding a deed of trust on the Property with a secured claim in the amount of $828,250, and tax liens to the Wake County Revenue Collector for tax years 2015 and 2016 in the respective amounts of $9,242.42 and $10,045.81. BR Dkt. 19 at 16-17. Schedule D also indicates that CitiMortgage, Inc. ("CitiMortgage") is to be notified for "a debt already listed," tied back to the ABN Amro listing. *Id.* at 17. Finally, Mr. Burgess lists his wife as a co-obligor on all of the claims secured by the Property. *Id.* at 22.

On November 8, 2016, CitiMortgage filed a proof of claim, Claim No. 3-1. The claim indicates that it is secured by a first lien deed of trust against the Property in the amount of $959,237.65, and asserts the amount necessary to cure any default as of the petition date is $241,346.99. No other party filed a proof of claim secured by a deed of trust against the Property.

On March 6, 2017, Mr. Burgess filed the Complaint in the instant adversary proceeding, AP Dkt. 1. The Complaint alleges that on September 15, 2006, Mr. Burgess executed a note in favor of Equity Services, Inc. in the amount of $865,000 (the "Note"), as well as a deed of trust (the "Deed of Trust") stating that Mortgage Electronic Registration Systems, Inc. ("MERS") "is

---

[1] References to documents filed in the underlying bankruptcy case are referred to herein as "BR Dkt. __." References to documents filed in this adversary proceeding are referred to herein as "AP Dkt. __."

the beneficiary under this Security Instrument." AP Dkt. 1 at ¶¶ 7, 13. The Complaint further alleges that the Note was purportedly endorsed by Lynn Wood to ABN Amro, but asserts that Lynn Wood was not authorized to endorse the Note.[2] *Id.* at ¶ 8. Thereafter, according to the Complaint, the Note was assigned by ABN Amro to Parkvale Savings Bank ("Parkvale") through an allonge, then indorsed in blank through a second allonge by First National Bank of Pennsylvania ("FNBP"). *Id.* at ¶¶ 10, 11. In addition, according to the Complaint, while FNBP acquired the stock of Parkvale and completed a merger in January 2012, it is impossible to determine whether FNBP had the authority to act on behalf of Parkvale at the time of the execution of the second allonge because it is undated. *Id.* at ¶ 12.

With respect to the Deed of Trust, the Complaint alleges that MERS acts as an agent for its members who are or become holders of a note. If the note is transferred to an organization that is not a MERS system member, then MERS must transfer the deed of trust out of MERS' name to that of the buyer. *Id.* at ¶ 15. Here, the Complaint asserts, Parkvale was not a MERS system member, yet MERS assigned the Deed of Trust to Parkvale on April 12, 2007, and MERS later assigned the Deed of Trust to CitiMortgage on September 13, 2012. *Id.* at ¶¶ 16-18.

The Complaint sets forth five causes of action that Mr. Burgess contends are supported by the factual allegations, identified as: (1) Objection to CitiMortgage's claim, on the theory that CitiMortgage cannot show a chain of title to either the Note or Deed of Trust to support its claim as the owner of the Note or the amount owed; (2) Lien Avoidance, on the theory that CitiMortgage cannot establish that it is the actual holder of the Note, and as a result the Deed of Trust is not

---

[2] The theory is that Lynn Wood was not an officer of Equity Services, and thus did not have authority to endorse the note on its behalf. Mr. Burgess was the president of Equity Services at the time the note was executed, which begs the questions: who is Lynn Wood and how did she come to endorse the note on behalf of an entity controlled by the borrower? And, what did Mr. Burgess know about it at the time? These are not issues for the motion before the court, but would certainly need to be answered if this matter were to carry forward.

supported by a valid debt held by CitiMortgage; (3) Lien Avoidance, on the theory that CitiMortgage is not a valid assignee of the Deed of Trust because MERS held no interest in the Deed of Trust at the time of its assignment to CitiMortgage; (4) Lien Avoidance pursuant to 11 U.S.C. § 544(a)(1), contending that the debtor-in-possession, as a hypothetical lien creditor, has a superior lien to any interest CitiMortgage may have; and (5) preservation of the avoided lien for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 550.

Also on March 6, 2017, Mr. Burgess filed his chapter 11 plan, BR Dkt. 42.[3] The plan provides for alternative treatment to CitiMortgage depending on the outcome of this adversary proceeding. In the event Mr. Burgess is successful in avoiding CitiMortgage's lien, the plan provides that CitiMortgage or the holder of the Note will have an unsecured claim. If CitiMortgage is successful, however, Mr. Burgess proposes to commence regular payments under the terms of the original Note, with the arrearage to be satisfied by extending the monthly payments under the existing terms of the Note until the arrearage is paid, beginning at the conclusion of the contract term. BR Dkt. 42 at 3, Art. IV ¶ 2. Not surprisingly, on March 28, 2017, CitiMortgage objected to this treatment because, among other reasons, it impermissibly modifies a debt secured only by a security interest in real property that is Mr. Burgess' principal residence in violation of 11 U.S.C. § 1123(b)(5). BR Dkt. 55.

On March 28, 2017, CitiMortgage filed a motion for relief from the automatic stay or in the alternative for adequate protection, BR Dkt. 56, contending that it is the actual holder of the Note and the true beneficiary of the Deed of Trust; that Mr. Burgess is in default on the Note

---

[3] Mr. Burgess filed his disclosure statement on March 10, 2017, BR Dkt. 46, but later withdrew it after advising the court of his belief that the disclosure statement was premature, and that it and the plan could not be considered until this adversary proceeding is determined. BR Dkt. 61.

secured by the Property due to nonpayment from September 2011; that as of the filing of the motion, the loan is in arrears from payments missed under the Note in the amount of $263,694.66 and the Note payoff is $973,299.45; that the debtor has no equity in the Property; and the Property is not necessary to the reorganization sought in the case.[4]

More pertinent to the matters addressed in this order, also on March 28, 2017, CitiMortgage filed a motion to dismiss this adversary proceeding pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. AP Dkt. 7. Although Local Rule 7007-1(a) requires the submission of a memorandum with a motion to dismiss, CitiMortgage chose instead to file only a twelve-paragraph motion contending, in essence, that it had obtained a final order of foreclosure prior to the filing of the petition that precludes Mr. Burgess from challenging CitiMortgage as the holder of the Note and Deed of Trust; and, further, that the allegations in the Complaint are mere conjecture and do not meet the Rule 9 requirement to plead fraud with particularity. In kind, Mr. Burgess' Response is neither a memorandum nor accompanied by a memorandum as required by Local Rule 7007-1(b), but its twelve paragraphs maintain that the issues raised in the motion to dismiss are affirmative defenses, that the debtor and the debtor-in-possession are not the same entity such that collateral estoppel would not apply to the foreclosure order, and that he has pled facts sufficient to state a claim. AP Dkt. 8.

The court conducted a hearing on May 18, 2017. During the hearing, the court inquired of counsel how a December 2016 Supreme Court of North Carolina opinion, *In re Foreclosure of a Deed of Trust Executed by Lucks*, -- N.C. --, 794 S.E.2d 501 (2016), impacted the issues in this adversary proceeding, and invited the parties to submit briefs on the issue. CitiMortgage accepted

---

[4] The motion for relief from stay or for adequate protection is addressed in a separate simultaneously issued order consistent with the findings herein.

the invitation and filed a brief, also taking the opportunity to include the legal argument supporting its request for dismissal that should have accompanied the motion itself. Mr. Burgess did not object and did not submit a post-hearing brief.

## DISCUSSION

### I.    STANDARD FOR RULES 12(b)(1) AND 12(b)(6)

#### A.    <u>Rule 12(b)(1)</u>

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). CitiMortgage seeks dismissal of Mr. Burgess' complaint on the grounds that the *Rooker–Feldman* doctrine divests this court of jurisdiction to consider his claims, arguing that Mr. Burgess is in essence seeking review by this court of findings made by the clerk of court in the state foreclosure action.

"The *Rooker–Feldman* Doctrine is a jurisdictional doctrine, and is different from the preclusion doctrines of *res judicata* and *collateral estoppel*." *Anderson v. Cordell (In re Infinity Bus. Grp., Inc.)*, 497 B.R. 495, 498-99 (Bankr. D.S.C. 2013) (citing *Lance v. Dennis*, 546 U.S. 459, 466 (2006); *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir.1993) (2006)). "The application of the *Rooker–Feldman* doctrine must be determined before considering *res judicata*." *Id.*, 497 B.R. at 499 (citing *Centres, Inc. v. Town of Brookfield, Wisc.*, 148 F.3d 699, 703 (7th Cir. 1998)).  If the doctrine is applicable, "the federal court lacks subject matter jurisdiction over the federal plaintiff's claims and the claims must be dismissed." *Guy v. Carrington Mortg. Servs (In re Guy)*, 552 B.R. 89, 95 (Bankr. D.S.C. 2016). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside

the pleadings without converting the motion into one for summary judgment. *Hardin v. Bank of America, N.A.*, No. 7:16-CV-75-D, 2017 WL 44709 (E.D.N.C. Jan. 3, 2017).

    **B.**    <u>**Rule 12(b)(6)**</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Supreme Court elaborated upon this conclusion in *Ashcroft v. Iqbal,* stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009); *see also Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal,* 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads enough "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

In reviewing a motion to dismiss under Rule 12(b)(6), the court may review documents attached to the complaint and incorporated by reference, *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), and may properly take judicial notice of matters of public record without converting the motion into one for summary judgment. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

## II. SUBJECT-MATTER JURISDICTION AND THE *ROOKER-FELDMAN* DOCTRINE

### A. *Rooker-Feldman* and Foreclosure Orders

CitiMortgage contends that this bankruptcy court does not have jurisdiction to consider whether it is the holder of the Note and Deed of Trust under any of Mr. Burgess' theories based upon a prior state court ruling in its favor and the *Rooker-Feldman* doctrine. "The *Rooker–Feldman* doctrine recognizes the principle that appellate jurisdiction to reverse or modify state court judgments is lodged exclusively with state appellate courts and the U.S. Supreme Court, and accordingly, it enunciates a jurisdictional limitation on lower federal courts' review of state court judgments." *Burcam Capital II, LLC v. U.S. Bank Nat'l Ass'n (In re Burcam Capital II, LLC)*, 539 B.R. 96, 99 (Bankr. E.D.N.C. 2015) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)).

> The doctrine extends to the issues actually presented to and decided by the state court, as well as those that are "inextricably intertwined" with the state court decision. *Hinson v. Countrywide Home Loans, Inc. (In re Hinson)*, 481 B.R. 364, 374 (Bankr. E.D.N.C. 2012). A federal claim is "inextricably intertwined" with a state court decision where the requested relief necessitates a finding by the federal

8

court that the state court judgment was erroneous, or requires action that would render the state court judgment ineffectual. *Id.*; *see also Shaw v. Harris*, Case No. 5:12–CV–804–BR, 2013 WL 5371183, at *2 (E.D.N.C. Sept. 29, 2013).

*Burcam*, 539 B.R. at 99.

The *Burcam* court looked at precisely the issue presented before this court: whether a chapter 11 debtor may challenge the purported holder of a note and deed of trust after a state court clerk has entered a foreclosure order making the requisite findings of "(1) the existence of a valid debt of which the party seeking to foreclose is the holder; (2) default; (3) right to foreclose under the instrument; and (4) proper notice." *Id.* (citing N.C. Gen. Stat. § 45–21.16(d)). Relying on the North Carolina statute providing that "the act of the Clerk of Court in issuing a foreclosure order is a judicial act, N.C. Gen. Stat. 45-21.16(d1)," the court concluded that the *Rooker-Feldman* doctrine applies to foreclosure orders issued by clerks of court. *Id.* Further, the question of "[w]hether the party seeking to foreclose is the holder of the note is a legal defense properly raised at the [foreclosure] hearing," such that "[g]ranting the . . . requested relief would require [the] court to reverse the Clerk's finding in the state foreclosure proceeding . . . ." *Id.* at 100.

Similarly, the United States District Court for the Eastern District of North Carolina held that a complaint challenging the standing of the defendants to foreclose and seeking declaratory relief concerning the validity of various assignments impermissibly sought to "appeal an unfavorable state-court decision to a lower federal court." *Hardin*, 2017 WL 44709 at *3. The court held that permitting "the claims to proceed would, in essence, require this court to hold that the state-court judgment was erroneous. [The plaintiff's] 'success on the merits would necessitate a finding that the state court wrongly decided the issues before it.' " *Id.* (citing *Smalley v. Shapiro & Burson, LLP*, 526 Fed. Appx. 231, 236 (4th Cir. 2013) (unpublished) (quoting *Brown & Root*

9

*Inc.*, 211 F.3d at 198) (internal quotations omitted))). Consequently, the court dismissed the claims for lack of subject-matter jurisdiction. *Id.*

Here, the state clerk of court in the foreclosure action found: (1) the existence of a valid debt of which the party seeking to foreclose is the holder; (2) default; (3) right to foreclose under the instrument; and (4) proper notice. A comparison of what Mr. Burgess would be required to establish in this case to succeed on each cause of action with what has already been established by the clerk in the foreclosure order shows the following:

- The First Cause of Action, Mr. Burgess' objection to CitiMortgage's claim on the theory that CitiMortgage cannot show a chain of title to either the Note or Deed of Trust to support its claim as the owner of the Note or the amount owed, would require a finding that CitiMortgage is not the holder of the Note, which contradicts the clerk's statutory finding on the first issue.

- The Second Cause of Action to avoid the lien on the theory that CitiMortgage cannot establish that it is the holder of the Note, such that the Deed of Trust is not supported by a valid debt held by CitiMortgage, would require a finding that CitiMortgage is not the holder of the Note, which contradicts the clerk's statutory finding on the first issue.

- The Third Cause of Action to avoid the lien on the theory that CitiMortgage is not a valid assignee of the Deed of Trust because MERS held no interest in the Deed of Trust at the time of its assignment to CitiMortgage would require the court to find that CitiMortgage had no right to foreclose under the Deed of Trust, which contradicts the clerk's statutory finding on the third issue.

- The Fourth Cause of Action to avoid the lien pursuant to 11 U.S.C. § 544(a)(1), because a hypothetical lien creditor would have a superior lien to any interest CitiMortgage may have, would require this court to find that the recorded Deed of Trust is invalid because it is not tied to a note validly held by CitiMortgage[5], which directly contradicts the clerk's specific finding on that issue.

---

[5] Section 544 would not allow a trustee or debtor in possession to avoid a lien as a result of questions regarding the holder of the deed of trust, as that is not an issue that could be determined by review of the public record. Whether the deed of trust ties back to an enforceable note, on the other hand, would fall within the parameters of the avoidance powers.

▪   The Fifth Cause of Action, preservation of the avoided lien for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 550, is dependent upon lien avoidance under the Fourth Claim for Relief.

In other words, for Mr. Burgess to prevail on each (or any) cause of action would require this court to make a finding that expressly contradicts the statutory findings that a clerk of court must enter in North Carolina to support an order of foreclosure. As a result, at first blush, *Burcam* and *Hardin* appear to answer conclusively the question of whether this court lacks jurisdiction over Mr. Burgess' claims. However, two recent decisions arguably modify the *Rooker-Feldman* analysis where the binding nature of a clerk's order allowing foreclosure is at issue, both of which merit further discussion.

### 1.    The North Carolina Supreme Court's Opinion in *Lucks*

The Supreme Court of North Carolina decided *Lucks*, -- N.C. --, 794 S.E.2d 501, on December 21, 2016.[6] Although *Lucks* is distinguishable from this case on its facts[7], the opinion contains the following troublesome language:

> ***Non-judicial foreclosure is not a judicial action***; the Rules of Civil Procedure and traditional doctrines of res judicata and collateral estoppel applicable to judicial actions do not apply. To the extent that prior case law implies otherwise, such cases are hereby overruled.

794 S.E.2d at 507 (emphasis added).

The first half (in ***bold italics***) of the first quoted sentence directly conflicts with North Carolina General Statutes § 45-21.16(d1), which provides that "the act of the clerk in so finding

---

[6] *Lucks* preceded the *Hardin* decision, but because the foreclosure order was affirmed by the state superior court on *de novo* review in *Hardin*, the issue addressed by *Lucks* was inapplicable to *Hardin*.

[7] Among other things, *Lucks* turns on whether an evidentiary finding by a clerk of court is binding upon the state superior court in an appeal de novo or in a subsequent *judicial* foreclosure action under state law, which are not issues presented in this case.

11

[the five enumerated factors[8]] or refusing to so find *is a judicial act* and may be appealed . . . ." (emphasis added). Significantly, it is the nature of the clerk's issuance of the order *as a judicial act* that informs the applicability of *Rooker-Feldman*.

Accordingly, in applying North Carolina law after *Lucks,* the court is faced with the dilemma of a state supreme court decision containing language that directly conflicts with a state statute.[9] The *Lucks* court did not acknowledge the conflict, nor did it state that the statute was unconstitutional or otherwise invalid. The statute is not vague or self-contradicting, but rather is clear and concise. Thus, the statute remains the law even in the face of a case seemingly ruling to the contrary. *See State v. Jackson,* 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001) ("When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.")  Reading the statute and *Lucks* together, the court can only conclude that the act of the clerk of court in entering a foreclosure order is a judicial act and *Lucks* does not impact the applicability of *Rooker-Feldman* in this case.

The remainder of the quoted section of *Lucks* addresses the court-created doctrines of res judicata and collateral estoppel, rather than a statutory provision, and falls within the state supreme court's authority to expand or limit those doctrines.[10]  However, as noted above, *Rooker-Feldman*

---

[8] The statute also requires a fifth finding that the loan is not a statutorily-defined home loan, or, if it is, that additional procedural requirements have been met. That requirement was not applicable or cited in *Burcam* because the debtor was a business entity and not a consumer.

[9] Despite the court's invitation to counsel to help it work through this problem, neither addressed this portion of *Lucks* at the hearing or in briefing the motion after the hearing.

[10] As discussed below, the United States District Court for the Western District of North Carolina has read this portion of *Lucks* narrowly, finding that res judicata and collateral estoppel still apply where the clerk made the applicable findings and entered an order of foreclosure, as opposed to the situation in *Lucks*, where the clerk found that one or more of the requirements was lacking and declined to enter an order allowing foreclosure. *Vicks v. Ocwen Loan Servicing, LLC*, No. 3:16-cv-00263-FDW, 2017 WL 2490007 at *2 n.3 (W.D.N.C. June 8, 2017).

12

and the preclusion doctrines of res judicata and collateral estoppel are distinct concepts; one only reaches the issues of res judicata and collateral estoppel if *Rooker-Feldman* does not apply in the first place. *Anderson*, 497 B.R. at 498-99. For the reasons stated, *Lucks* does not impact whether *Rooker-Feldman* continues to apply to pre-bankruptcy foreclosure orders, and its impact on a preclusion analysis is discussed below.

### 2.   The Fourth Circuit's Decision in *Vicks*

The second important development since *Burcam* and *Hardin* were decided is the unpublished decision of the United States Court of Appeals for the Fourth Circuit in *Vicks v. Ocwen Loan Servicing, LLC*, 676 Fed. Appx. 167 (4th Cir. Jan 25, 2017) (per curiam). In that case, the plaintiff brought claims against a mortgage lender under the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024.35 (2016) and various North Carolina statutes, seeking among other remedies a declaration that the foreclosing creditor had no rights to the loan proceeds notwithstanding a foreclosure order finding that the creditor was the holder of the debt. The district court dismissed the claims for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *Vicks v. Ocwen Loan Servicing, LLC*, 3:16-cv-00263-FDW, 2016 WL 3769759 (W.D.N.C. July 14, 2016).

The Fourth Circuit reversed. The appellate court explained that *Rooker-Feldman* is to be applied narrowly, only when the plaintiff seeks review of the state court decision itself or alleges injury caused by the state court order. 676 Fed. Appx. at 168.

> Where a federal complaint raises claims independent of, but in tension with, a state court judgment, the *Rooker-Feldman* doctrine "is not an impediment to the exercise of federal jurisdiction" simply because "the same or a related question was earlier aired between the parties in state court," and any tension created by the concurrent federal and state proceedings "should be managed through the doctrines of preclusion, comity, and abstention."

*Id.* (citing *Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (internal quotation marks omitted)).

Further, the circuit court stated that "the mere fact that a ruling favorable to the federal plaintiff may call into question the correctness of a state court judgment has no bearing on the federal court's jurisdiction over the plaintiff's claims under *Rooker-Feldman*." *Id.* at 169. Reviewing the specific claims, the court held that "while success on these claims could call into question the validity of the state court's May 2011 order authorizing foreclosure, the claims do not seek appellate review of that order or fairly allege injury caused by the state court in entering that order." *Id*. Accordingly, it concluded that *Rooker-Feldman* did not apply, and that the district court erred in dismissing the case for lack of subject-matter jurisdiction.[11]

The *Vicks* opinion is unpublished (and thus is not binding precedent), but it is based upon published cases and calls into question years of application of the doctrine of *Rooker-Feldman* by district and bankruptcy courts in cases with facts like those before the court. Rather than apply *Rooker-Feldman*, *Vicks* invites courts to exercise subject-matter jurisdiction and apply preclusion and comity doctrines even if one of the remedies might ultimately be at odds with a state court's direct finding. 676 Fed. Appx. at 168. In this case, however, Mr. Burgess does not allege a cause of action separate from the defenses he raised or could have raised at the foreclosure hearing (ownership of the note and deed of trust) in support of a separate cause of action such as a RESPA violation. Instead, in the first three causes of action, he effectively seeks to set aside the state court findings on the identical question of secured creditor status, which if successful would turn this

---

[11] As discussed below, on remand, the district court dismissed the claims pursuant to Rule 12(b)(6). *Vicks,* 2017 WL 2490007 (W.D.N.C. June 8, 2017).

court into a de facto state appellate court – precisely the type of activity the *Rooker-Feldman* doctrine is designed to prohibit.

The only federal statutory remedies sought in the Complaint are founded on sections 544 and 550 of the Bankruptcy Code. Both claims pre-suppose from a drafting standpoint success on one of the three first causes of action as shown by the re-allegation and incorporation of the three prior stated causes of action (Paragraphs 1-39 of the Complaint. If the first three causes of action cannot stand because they are effectively appeals of the state foreclosure order in contravention of the *Rooker-Feldman* doctrine, the two Bankruptcy Code claims fail as well.

Finally, this court does not believe that the Fourth Circuit intended to eviscerate longstanding doctrine through an unpublished opinion, and thus notes the *Vicks* opinion but concludes that it does not change the result in this case: that *Rooker-Feldman* bars the claims challenging CitiMortgage as the holder of the Note and Deed of Trust under the clear findings by the clerk of court in the state foreclosure proceeding.

### B.    The Application *of Rooker-Feldman* to the Debtor-in-Possession

Mr. Burgess proffers an additional argument to escape the application of *Rooker-Feldman*, maintaining that because the debtor-in-possession ("DIP") is a distinct entity from Mr. Burgess personally, he as DIP cannot be bound by the state court foreclosure order in his efforts to avoid the lien pursuant to the strong-arm powers of sections 544 and 550 of the Bankruptcy Code. The Fourth Circuit rejected a similar argument in imputing knowledge to the DIP in *Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.)*, 745 F.2d 307 (4th Cir. 1984). There, the court considered whether a DIP could step into the shoes of a hypothetical bona fide purchaser without notice when pursuing a claim under § 544(a)(3), and held that because the debtor had actual knowledge of a conveyance, it could not rely on the absence of the relevant deed on the public

record. *Id.* at 310. Here, on this question the issue is whether Mr. Burgess as DIP is bound by Mr. Burgess' failure to appeal the clerk's foreclosure order. The *Rooker-Feldman* doctrine is one that prevents a collateral attack on a state court order, and is not dependent upon identity of parties like res judicata and collateral estoppel may be. Even without the legal distinction between the debtor and the DIP, an independent bankruptcy trustee would also be precluded from collaterally attacking the foreclosure order. Further, under the reasoning of *Hartman Paving*, the court concludes that the DIP is bound by the final foreclosure order such that to the extent *Rooker-Feldman* applies, the distinction between the debtor and the DIP does not change the result.[12]

In summary, neither *Lucks* nor the legal distinction between the debtor and DIP impact the court's analysis of the applicability of the doctrine of *Rooker-Feldman*, and standing alone this court's precedent would lead to the conclusion that the doctrine applies and this court lacks subject matter jurisdiction over this matter such that the complaint must be dismissed. The court is persuaded that *Vicks* was not intended to eviscerate the doctrine of *Rooker-Feldman*, and therefore holds that *Rooker-Feldman* applies and this court does not have subject-matter jurisdiction. However, in an abundance of caution, the court will rule in the alternative on the defendant's motion under Rule 12(b)(6) as well.

---

[12] Although this issue was not addressed in *Burcam*, the DIP in that case, and the DIP in any chapter 11 case where a state court foreclosure order was entered prepetition, would have had the same argument. Yet, courts have consistently held that the chapter 11 DIP is precluded from challenging whether the creditor is the noteholder with rights under a deed of trust after the foreclosure order becomes final. *See, e.g., Burcam*, 539 B.R. 96; *Buckskin Realty, Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty, Inc.),* No. 15-01004, 2016 WL 5360750 (Bankr. E.D.N.Y. Sept. 23, 2016); *In re 56 Walker LLC*, No. 13-11571 (ALG), 2014 WL 1228835 (Bankr. S.D.N.Y. March 25, 2014).

16

### III.    FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

#### A.    Issue and Claim Preclusion

Under Rule 12(b)(6), a claim must be dismissed if it is clear from the complaint that the plaintiff is not entitled to relief as a matter of law. Whether or not *Rooker-Feldman* applies to Mr. Burgess' claims, Mr. Burgess has failed to state a claim upon which relief may be granted as a result of the application of the doctrines of res judicata and collateral estoppel.[13] *See Hardin*, 2017 WL 44709 at *5.  Under the doctrine of collateral estoppel, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). Further,

> A companion doctrine to *res judicata,* which bars every ground of recovery or defense which was actually presented or which could have been presented in the previous action, collateral estoppel bars only those issues actually decided which were necessary to the prior finding or verdict. [*King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973).] Like *res judicata,* collateral estoppel only applies if the prior action involved the same parties or those in privity with the parties and the same issues. *Id.* In the context of collateral estoppel and *res judicata,* the term privity indicates a mutual or successive relationship to the same property rights. *Moore v. Young,* 260 N.C. 654, 133 S.E.2d 510 (1963). An exception to the general requirement of privity exists where one not actually a party to the previous action controlled the prior litigation and had a proprietary interest in the judgment or in the determination of a question of law or facts on the same subject matter. In such a case, the one who was not a party to the prior action is bound by the previously litigated matters as if he had been a party to that action. *Thompson v. Lassiter,* 246 N.C. 34, 97 S.E.2d 492 (1957).

*Goins v. Cone Mills Corp.*, 90 N.C. App. 90, 93, 367 S.E.2d 335, 336-37 (1988).

---

[13] The complaint likely states sufficient facts to plead a plausible claim under *Twombly* and *Iqbal* that would otherwise survive the Rule 12(b)(6) motion (but would still be an uphill battle on summary judgment) for the First, Second, and Third Causes of Action; however, even if all of the pled facts are true, the plaintiff cannot recover as a matter of law because of issue and claim preclusion.

17

These principles were applied to analogous facts in *Hardin* and *Vicks*, and the respective district courts' reasoning in those cases applies. In *Hardin*, the plaintiff's claims rested "upon the premise that the debt was improperly or illegally assigned, that no valid debt exists, that [the plaintiff] was not in default, or that no defendant had standing to foreclose." 2017 WL 44709, at *5. Noting that "[a]ny issue that the clerk decides in a foreclosure proceeding under N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed and reversed and cannot be relitigated in a subsequent lawsuit," the district court held that collateral estoppel precluded the plaintiff from relitigating those issues. *Id.* Further, to the extent the plaintiff failed to raise any of those issues in the underlying foreclosure proceeding, the doctrine of res judicata barred her from raising them in the federal court litigation. *Id.* (citing *Goins*, 90 N.C. App. at 93, 367 S.E.2d at 336-37 (noting that res judicata bars "every ground of recovery or defense which was actually presented or which could have been presented in the previous action")).

Similarly, in *Vicks*, on remand from the Fourth Circuit, the court found that the plaintiff's claim seeking a declaration that the foreclosing creditor had no rights in the loan was barred by the doctrine of collateral estoppel.

> Plaintiffs' first two claims rest upon the premise that no valid debt existed and that Defendant failed to provide the required pre-foreclosure notice. . . . The North Carolina clerk, however, resolved these issues against Plaintiffs in the foreclosure proceeding, which is binding and conclusive on those issues. Plaintiffs fail to allege a legitimate reason why this Court should disregard the valid and binding state court determinations, and those determinations are fatal to Plaintiffs' first two claims.

*Vicks,* 2017 WL 2490007 at *2. Citing to *Hardin*, the court found that "Plaintiffs essentially seek to attack and undermine the legitimacy of the state foreclosure proceedings that found a valid debt, in default, [and] subject to foreclosure . . . . Plaintiffs may not now challenge collection and foreclosure efforts predicated upon a valid Order of Foreclosure." *Id.* at *3.

18

In an effort to avoid preclusion of their claims, the *Vicks* plaintiffs cited to *Lucks*, contending that res judicata and collateral estoppel did not apply to the non-judicial foreclosure order. The district court on remand in *Vicks* determined that *Lucks* did not hold that res judicata and collateral estoppel are not applicable to the circumstances presented in the *Vicks* case, but only apply where the clerk *denied* authorization for a foreclosure sale and the creditor returned to the clerk on the same or subsequent default. In other words, *Lucks* allowed a creditor to seek a new foreclosure order on a different default, as distinct from seeking review of an order *on the same facts* (which presumably would still be barred by res judicata or collateral estoppel).[14] *Id.* at *2-3 n.3. This court agrees that *Lucks* does not impact its application of res judicata or collateral estoppel in this case, and notes that in *Lucks*, the superior court found that it was bound by principles of res judicata not to consider evidence a clerk previously found to be inadmissible, but the North Carolina Supreme Court held that the trial court is not so bound in a subsequent judicial foreclosure action. The binding or nonbinding nature of a clerk of court's evidentiary rulings are not at play in this case.

Based on the reasoning in *Hardin* and *Vicks*, and utilizing the analysis above that each cause of action would require this court to reverse a specific finding by the clerk of court in issuing the foreclosure order, the court concludes that Mr. Burgess' claims all rest on whether or not CitiMortgage is the valid holder of the Note and Deed of Trust, and that those matters were conclusively established by the clerk in entering the foreclosure order.[15] Accordingly, each of the

---

[14] Like *Hardin*, however, the *Vicks* foreclosure order had been upheld on *de novo* review, such that the final order was one of a court, and not a clerk, and *Lucks* did not apply at all.

[15] The court also rejects Mr. Burgess' contentions that the DIP is not the same party and this is not bound by the foreclosure order, just as a trustee or DIP would be bound by a state statute of limitations, a trustee or DIP is similarly bound by a state court's adjudication of the relative rights of the parties.

five claims set out in the Complaint are barred by the doctrines of collateral estoppel and res judicata, and accordingly must be dismissed.

**B.**    **Pleading Sufficiency**

Mr. Burgess' Fourth and Fifth Cause of Action arise from the strong-arm provisions of the Bankruptcy Code. At best, Mr. Burgess' causes of action under sections 544 and 550 are those carved out from the doctrine of *Rooker-Feldman* by the Fourth Circuit's decision in *Vicks*. While the court believes that the reasoning in *Hartman Paving* would equally preclude the DIP from challenging CitiMortgage as the holder of the Note and Deed of Trust pursuant to res judicata and collateral estoppel and that the DIP would have the same interests as Mr. Burgess individually, the court finds that the sections 544 and 550 claims also must fail for failure to meet the particularity requirements set forth in *Iqbal* and *Twombly*.

The Fourth Cause of Action incorporates by reference the factual allegations with respect to the chain of title of the Note and Deed of Trust, and then alleges the following:

> 41. Pursuant to 11 USC § 544(a)(1), the Plaintiff assumes the position of a hypothetical creditor who, at the time the bankruptcy petition was filed, not only advanced credit to the Debtor, but instantaneously obtained a judgment lien on all of the Debtor's assets under a simple contract enforcement action.

> 42. As a hypothetical creditor, the Plaintiff's lien is superior to any interest that the Defendant may have.

AP Dkt. 1 at 5, ¶¶ 41-42.

The Complaint does not explain why a judgment lien creditor would take priority over a duly recorded deed of trust that relates to a valid note, supporting the assumption that the section 544 claim is entirely dependent upon the assertion that CitiMortgage is not the holder of the Note, as discussed in section II.A.2, above. The point of pleading, however, is that the court and the defendant should not be required to guess as to the basis of the claim. If the court and other litigants

are left to speculate at a plaintiff's meaning due to a lack of sufficient factual allegations, a valid cause of action has not been stated.

As a result, the Fourth Cause of Action is dismissed pursuant to Rule 12(b)(6). And because the Fifth Cause of Action is dependent upon success on the Fourth Cause of Action, it must also be dismissed.

## CONCLUSION

Based on the foregoing, the motion to dismiss the Complaint in this Adversary Proceeding is ALLOWED pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, by application of the *Rooker-Feldman* doctrine.   In the alternative, the motion to dismiss the Complaint is also ALLOWED pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, because the claims are precluded by res judicata and collateral estoppel, and with respect to the Fourth and Fifth Causes of Action, for failure to state claims sufficient to satisfy the pleading requirements set forth in *Iqbal* and *Twombly*.

**END OF DOCUMENT**